UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL
OF CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, and THE NEW
YORK CITY AND VICINITY CARPENTERS LABOR
MANAGEMENT COOPERATION FUND, by MICHAEL
J. FORDE, and PAUL O'BRIEN, as TRUSTEES, AND
MICHAEL J. FORDE, AS EXECUTIVE SECRETARY-
TREASURER, DISTRICT COUNCIL FOR NEW YORK
CITY AND VICINITY, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

|  |  |
|---|---|
| | 08 CV 869 (LTS) |
| | ECF CASE |
| | **AFFIDAVIT OF COUNSEL** |
| | **IN SUPPORT OF** |
| | **DEFAULT JUDGMENT** |

Plaintiffs,

-against-

PITKIN CARPET INC.,

Defendant.

-------------------------------------------------------------------------------X

STATE OF NEW YORK    )
                                        ) ss:
COUNTY OF NEW YORK  )

ANDREW GRABOIS, Esq. being duly sworn, deposes and says,

1.    I am associated with the firm of O'Dwyer & Bernstien, LLP, attorneys for

plaintiffs ("Funds") in the above captioned action.  I am familiar with all the facts and

circumstances in this action.

2.    I submit this affidavit in support of plaintiffs' motion to confirm the arbitration

award against Pitkin Carpet Inc. ("Defendant"), dated November 17, 2007.

3.    Upon information and belief Defendant is a corporation and not an infant, in the military or an incompetent.

4.    Subject matter jurisdiction of this action is based upon Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, Sections 502(a)(3)(B)(ii), (d)(1), (e) and (g) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1132(a)(3)(B)(ii), (d)(1), (e) and (g), Section 515 of ERISA, 29 U.S.C. §1145, and Section 9 of the Federal Arbitration Act, 9 U.S.C. §9.   Personal jurisdiction is based upon Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2).

5.    Plaintiffs brought this action to confirm an arbitration award to compel the production of Defendant's books and records pursuant to a collective bargaining agreement between the Defendant and the District Council for New York City and Vicinity, United Brotherhood of Carpenters and Joiners of America.

6.    Defendant is a signatory to a Collective Bargaining Agreement (hereinafter referred to as "Agreement") with the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO.  (A true and correct copy of said Agreement is annexed hereto as Exhibit "A").

7.    The Agreement relevant to this matter, the Independent Resilient Floor Coverers Agreement, provides at Article X, Section A that "the Employer shall make available to the Trustees of the various Fringe Benefit Trust Funds, or their designated auditing representative, all pertinent books and records … required for an audit, to enable a said auditor to ascertain and independently verify that the proper contributions hereunder have been paid and such records will be produced whenever deemed necessary by the Trustees…".

8.    Defendant has failed to furnish these records for the purpose of conducting an

audit to ensure compliance with required benefit fund contributions as required under the Agreement. Plaintiffs issued a Notice of Intention to Arbitrate on October 26, 2007. (A copy is annexed hereto as Exhibit "B").

9.    Pursuant to the arbitration clause of the Agreement, the dispute was submitted to arbitration to Robert Herzog, the duly designated impartial arbitrator. Thereafter, upon due notice to all parties (a copy of which is annexed hereto as Exhibit "C"), the arbitrator held a hearing and rendered his award, in writing, dated November 17, 2007 determining said dispute. (A copy is annexed hereto as Exhibit "D"). Upon information and belief, a copy of the award was sent to the defendant.

10.    The arbitrator found that Pitkin Carpet Inc. had failed to comply with the Agreement as it relates to paying fringe benefit monies and directed it to furnish the Plaintiffs with any and all books and records, for the period of January 1, 2004 through November 17, 2007 including but not limited to, the cash disbursement section of the cash book, general ledger, job location records, daily time records and all certified payrolls.

11.    The arbitrator also found that Pitkin Carpet Inc. was required to pay the funds a total sum of $2,350.00 pursuant to the Agreement, representing costs incurred in the arbitration.

12.    The defendant has failed to abide by the award.

13.    The award has not been vacated or modified and no application for such relief is currently pending or has been made.

14.    Plaintiffs commenced this action on January 24, 2008 by filing a summons and complaint. (A copy is annexed hereto as Exhibit "E"). Plaintiffs subsequently served the summons and complaint together with the Judge's rules upon Defendant by delivering two (2) true copies of the same to the Secretary of the State of New York on January 29, 2008, pursuant

to Section 306(b) of New York Business Corporation Law and an affidavit of service was filed

with the Court on February 20, 2008.  (A copy is annexed hereto as Exhibit "F").

15.     Defendant has failed to answer or appear or move with respect to the complaint

and the time to do so has expired.  (A copy of the Clerk's Certificate is annexed hereto as Exhibit

"G").

16.     There has been no prior application for relief sought herein.

WHEREFORE, Plaintiffs seek a judgment against Defendant and in favor of plaintiffs as

follows:

    a.  confirming the arbitrator's award;

    b.  ordering Pitkin Carpet Inc. and its officers to make available to the Plaintiffs
        or authorized representatives any and all books and records deemed
        necessary to conduct an audit including, but not limited to, the cash
        disbursement section of the cash book, general ledger, job location records,
        daily time records and all certified payrolls for the period January 1, 2004
        through November 21, 2007.

    c.  awarding judgment for the plaintiffs and against Defendant in the principal
        amount of $2,350.00;

    d.  attorneys' fees and costs arising out of this confirmation action as
        determined by the court. (An Affidavit of Services is annexed hereto as
        Exhibit "H" and a proposed Judgment is annexed hereto as Exhibit "I");

e.  such other and further relief as this Court may deem just and proper

ANDREW GRABOIS (AG 3192)

Sworn to before me this
24th day of April, 2008

NOTARY PUBLIC
NICHOLAS HANLON
Notary Public, State of New York
No. 02HA6167368
Qualified in Westchester County
Commission Expires May 29, 2011

# INDEPENDENT

# RESILIENT FLOOR COVERERS

# AGREEMENT

### between

## PITKIN CARPET INCORPORATED
## 368 EAST DUNHILL ROAD
## BRONX NEW YORK 10467

### - and -

## THE DISTRICT COUNCIL OF NEW YORK
## CITY AND VICINITY OF THE UNITED
## BROTHERHOOD OF CARPENTERS AND
## JOINERS OF AMERICA, AFL-CIO

### JULY 01, 2001 - JUNE 30, 2006

EXHIBIT

**TABLE OF CONTENTS**

**Article**                                                                **Page**

I       Jurisdiction....................................   1
II      Geographical Jurisdiction.......................   3
III     Union Security..................................   3
IV      Hours of Labor..................................   5
V       Holidays........................................   7
VI      Wage Rates and Fringe Benefits..................   8
VII     Classification of Industry......................  15
VIII    Job Referral....................................  16
IX      General Foreman, Foreman, Lead Person...........  21
X       Welfare, Pension, Vacation, Annuity,
        Apprenticeship, Journeymen Retraining
        Educational and Industry Fund, U.B.C. & J.A.
        Fund, Supplemental Funds........................  22
XI      Bonding.........................................  31
XII     Miscellaneous Conditions........................  32
XIII    Grievance and Arbitration.......................  37
XIV     Greater New York Floor Coverers Industry
        Promotional Fund................................  38
XV      Savings Clause..................................  40
XVI     Expiration Automatic Renewal....................  41
XVII    Effectuating Clause.............................  42

**AGREEMENT** made and entered into this 1st day of July 2001 and effective as of November 20th , 2003, between:

# PITKIN CARPET INCORPORATED
# 368 EAST DUNHILL ROAD
# BRONX NEW YORK 10467

HEREIN REFERRED TO AS
(THE "EMPLOYER")

**and the**

DISTRICT COUNCIL OF NEW YORK CITY AND
VICINITY OF THE UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA
HEREIN REFERRED TO AS
(THE "UNION" and/or THE "DISTRICT COUNCIL")

### ARTICLE I
### JURISDICTION

(A) The Employer recognizes the Union as the sole and exclusive bargaining agent for those employees of the Employer covered by the Agreement doing work within the jurisdiction of of the Union.

(B) This Agreement shall cover, and grant the persons covered hereunder, work jurisdiction over all resilient floor covering and related materials, whenever applied, including, but not limited to, all work which consists of measuring, cutting, fitting, taking up and laying of new and old carpets, protective covering as necessary

cork, rubber, linoleum, mastic, asphalt, vinyl, or other composition tiles for floors, walls or ceilings, drilling of holes for sockets and pins, waxing of linoleum, rubber and all other above-mentioned floor, wall or ceiling covering, fitting devices for the attachment of carpet and other floor coverings, the priming of concrete and flash patching, the spreading of all adhesives and the preparation of cracks and expansion joints. Seamless floor covering and the handling of all the above-mentioned materials, in the stores, warehouses and on jobsites, and any and all materials covered by the United Brotherhood of Carpenters and Joiners of America. Cement down wood flooring shall be deemed to be covered under this Agreement in any geographical area normally considered to be within the jurisdiction of the Union.

(C) This Agreement shall also cover all work which consists of sewing, altering, mending, binding or otherwise making, remodeling or repairing of new or old carpets, including oriental rugs, on commercial and rehabilitation jobs and in warehouses.

(D) The handling and installation, including the operation of any and all machinery and/or equipment in any way related to the handling and installation of all carpeting known as ASTRO-TURF or any similar name or type, whether used indoors or outdoors, is under the jurisdiction of the Union. The spraying of cement and/or adhesives for the purpose of receiving any type of flooring

2

materials wherever or however applied, as well as the operation of any other equipment in any way connected with such installation, shall be deemed to be covered under this Agreement and within the jurisdiction of the Union.

(E) Employees reporting for work outside of the geographical jurisdiction of this Collective Bargaining Agreement, having been directed to do so by an Employer who is bound by the provisions of this Agreement, shall be entitled to all the provisions of this Agreement, regardless of the wage and fringes prevailing in the geographical area in which they are directed to report to work. If the Union has a reciprocal agreement with other Unions outside of its jurisdictional area, then the balance, if any, of wages and fringe benefits shall be paid to the Union and/or the Fund. If no such reciprocal agreement exists, all such wages and fringe benefits shall be paid to the Union and/or Fund.

## ARTICLE II

### GEOGRAPHICAL JURISDICTION

This Agreement shall cover work performed by the Employer when employing Journeymen and all other employees within the scope of this Agreement within the following territorial jurisdiction in the State of New York:

Counties of:    Bronx              Queens

3

| | |
|---|---|
| Kings | Richmond |
| Nassau | Rockland |
| Manhattan | Suffolk |
| Orange | Westchester |
| Putnam | Dutchess |

### ARTICLE III

### UNION SECURITY

(A)  All employees who are members of the Union at the time of signing of this Agreement shall continue membership in the Union. All other employees covered by this Agreement who are employed by Employers engaged primarily in the Building and Construction Industry shall become members of the Union seven (7) days following the beginning of employment by a member of the Association or the date of this Agreement, whichever is later, and shall retain such membership in good standing during the term of this Agreement as a condition of continued employment by a member of the Association.

(B)  All employees covered by this Agreement who are employed by Employers not engaged primarily in the building and construction industry shall become members of the Union on the thirtieth day following the beginning of employment, or the date of this Agreement, whichever is later, and shall retain such membership during the term of this Agreement as a condition of continued employment.

(C)  The Employer agrees upon notice from the Union to

4

discharge any person covered hereunder who has not become or remained a member in good standing in the Local 2287, UBCJA, provided that such membership was available to the person based on terms and conditions applicable to other members and that membership was not denied or terminated for any reason other than the failure of the individual to tender periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

(D) Each Employer warrants that no enterprise which the Employer or any officer, stockholder, partner or agent of the Employer has substantial de facto interest in now, or achieves during the term of this Agreement, shall engage in any activities covered under this Agreement without being bound to all the terms and conditions of this Agreement. The parties further acknowledge that those who engage in activity in violation of this provision cause great and incalculable damage to the Union and its members. Since the exact damage suffered by the Union due to a violation of this provision is not readily calculable, the parties agree that any employer, officer, stockholder, partner or agent who violates this **section**, as well as the Employer itself, shall pay liquidated damages in the sum of Ten Thousand ($10,000) Dollars or the amount of actual damages the Union can prove, whichever is higher to the Union for each violation of this provision.

5

## ARTICLE IV

## HOURS OF LABOR

(A)  The intent is to maintain the seven-hour-work day, thirty five hour work week.  During the term of this Agreement, the work day may be increased to eight hours work at straight time pay hours and a forty hour work week at straight time pay to attempt to provide additional work hours for the employee-members and the signatory Employer to manage its project and provide increased work opportunities.  The Employer, with notification to the Union, is expected to establish and maintain a reasonable work week schedule allowing for unusual jobsite conditions.

(B)  Flexible Starting Time: The normal work day shall start at eight (8) a.m. and may be changed by the Employer due to work site conditions to start between seven (7) a.m. and nine (9) a.m. for all or a portion of the employees.  Notification to the Union will be given by the Employer when changed from the normal eight (8) a.m. starting time.

(C)  All additional hours worked shall be paid at the time and one-half rate.

(D)  The Employer may start a portion of the crew one hour prior to the established start time at straight time wages due to unusual job site conditions.  The Contractor will determine the number of employees necessary.  The working steward will be part of

the early crew.  It is understood this is not intended to establish a continuous staggered work day.

(E)  Saturday:  All hours worked shall be paid for at the rate of time and one-half.  When a holiday falls on a Saturday, then the rate shall be double time.

(F)  Employees shall be allowed five (5) minutes prior to lunchtime in which to clean up. They shall be allowed an additional five (5) minutes prior to quitting time and shall be released from work in sufficient time that they shall be in the locker room five (5) minutes before quitting time.

## ARTICLE V

## HOLIDAYS

(A)  The contractual holidays are:

New Year's Day
President's Day
Memorial Day
Independence Day
Labor Day

Columbus Day
Presidential Election Day
Thanksgiving Day
Day after Thanksgiving
Christmas Day

(B)  It is further agreed that no work shall be performed on

Sundays or Legal Holidays, except in the case of emergency or necessity, and that no work shall be performed then unless permission is granted by the District Council on the previous workday, stating location of building where work is to be performed and the number of workers required. DOUBLE TIME SHALL BE PAID FOR ALL WORK ON SUNDAYS, AND LEGAL HOLIDAYS, except as otherwise noted. Emergency work, INVOLVING DANGER TO LIFE AND PROPERTY, may be performed without permission from the District Council.

(C)  The listed Holidays are to be non-paid holidays except for the General Foreman, Foreman and First and Second Year Apprentices who shall be paid on a weekly basis (inclusive of holidays).

(D)  In all cases, the Holidays referred to shall be observed on the day and date established by the State of New York. When permission is granted to work on such Legal Holidays, double time shall be paid.

(E)  Except as provided herein, General Foremen, Foremen and first and second year apprentices shall be employed according to the established work week as provided herein except when due to the exigencies of the situation, Local 2287 grants permission to the Employer to employ apprentices for a period of time of less than a full week. This weekly payroll basis will be followed regardless of whether a holiday falls within the week in question, provided

that the individual entitled to weekly pay has been ready, willing and able to work during the week in question.

(F)  Employees employed on the last legal working day before Christmas Day and before New Year's Day and who report to work on such days, shall receive three (3) hours' afternoon pay without working.  Work performed on the afternoons of said days shall be paid at the double-time rate only.  Fringe Benefit Contributions will be payable on the half-holidays referred to above.

(G)  When a Legal Holiday, defined herein this **Article**, falls on a Sunday and the following day is declared a Legal Holiday, then double-time shall be paid for all hours worked. If a Holiday is to be worked, the Union shall be notified by noon of the previous work day. No work shall be performed on Labor Day.

## ARTICLE VI

## WAGE RATES AND FRINGE BENEFITS

Section 1.  Wages - Wage rates and fringe benefit contribution within the bargaining unit shall be determined and/or reallocate by Union at its sole discretion:

| TOTAL WAGE & FRINGES | 07/01/96 | 01/01/97 | 07/01/97 | 01/01/98 | 07/01/98 |
|---|---|---|---|---|---|
| JOURNEYMAN CARPENTER | | | | | |

9

Total package per hr  $  47.11    48.03    49.19    50.35    51.27

**TOTAL WAGE & FRINGES**

| | 01/01/99 | 07/01/99 | 01/01/00 | 07/01/00 | 01/01/01 |
|---|---|---|---|---|---|

**JOURNEYMAN CARPENTER**

Total package per hr  $  52.19    53.11    54.03    55.19    56.35

**CARPENTER FOREMAN**

Wage rates per hour  **FOREMAN ADD IN $2.50**

**CARPENTER GENERAL FOREMAN**

Wage rates per hour  **GENERAL FOREMAN ADD IN $5.00**

| **EFFECTIVE DATES** | 07/01/96 | 01/01/97 | 07/01/97 | 01/01/98 | 07/01/98 |
|---|---|---|---|---|---|
| Journeymen<br>Wage rates per hour | $ 27.98 | 28.90 | ---- | ---- | ---- |
| Foreman<br>Wage rates per hour | $ 30.48 | 31.40 | ---- | ---- | ---- |
| General Foreman<br>Wage rates per hour | $ 32.98 | 33.90 | ---- | ---- | ---- |
| Sewers & Hand Sewers<br>Wage rates per hour | $ ---- | ---- | ---- | ---- | ---- |
| Standing & Table Machine<br>Journey Persons And Foreman<br>Wage rates per hour | $ ---- | ---- | ---- | ---- | ---- |

| **EFFECTIVE DATES** | 01/01/99 | 07/01/99 | 01/01/00 | 07/01/00 | 01/01/01 |
|---|---|---|---|---|---|

```
Journeymen
Wage rates per hour      $ ----     ----     ----     ----     ----

Foreman
Wage rates per hour      $ ----     ----     ----     ----     ----

General Foremen
Wage rates per hour      $ ----     ----     ----     ----     ----

Sewers & Hand Sewers
Wage rates per hour      $ ----     ----     ----     ----     ----

Standing & Table Machine
Journey Persons And Foreman
Wage rates per hour      $ ----     ----     ----     ----     ----
```

**APPRENTICES**

Apprentice wage increases may be deferred for reasons determined by the Joint Apprentice Committee and or it's Training Director by written notice to the employer.

| EFFECTIVE DATES | 07/01/96 | 01/01/97 | 07/01/97 | 01/01/98 | 07/01/98 |
|---|---|---|---|---|---|
| 1st Year Wage rates per hour | $ 11.19 | 11.56 | ---- | ---- | ---- |
| 2nd Year Wage rates per hour | $ 14.09 | 14.45 | ---- | ---- | ---- |
| 3rd Year Wage rates per hour | $ 18.45 | 18.79 | ---- | ---- | ---- |
| 4th Year Wage rates per hour | $ 22.80 | 23.12 | ---- | ---- | ---- |

| **EFFECTIVE DATES** | 01/01/99 | 07/01/99 | 01/01/00 | 07/01/00 | 01/01/01 |
|---|---|---|---|---|---|
| 1st Year<br>Wage rates per hour | $ ---- | ---- | ---- | ---- | ---- |
| 2nd Year<br>Wage rates per hour | $ ---- | ---- | ---- | ---- | ---- |
| 3rd Year<br>Wage rates per hour | $ ---- | ---- | ---- | ---- | ---- |
| 4th Year<br>Wage rates per hour | $ ---- | ---- | ---- | ---- | ---- |

**FRINGE BENEFITS PER HOUR**
**Journeymen, Foreman,**
**General Foreman**
**Sewers, Table and Machine Operators**

| | 07/01/96 | 01/01/97 | 07/01/97 | 01/01/98 | 07/01/98 |
|---|---|---|---|---|---|
| WELFARE | $ 7.24 | 7.24 | ---- | ---- | ---- |
| PENSION | $ 3.09 | 3.09 | ---- | ---- | ---- |
| ANNUITY | $ 4.00 | 4.00 | ---- | ---- | ---- |
| A.J.R.E.I.F. | $ 0.50 | 0.50 | ---- | ---- | ---- |
| VACATION | $ 4.10 | 4.10 | ---- | ---- | ---- |
| SUPPLEMENTAL FUNDS | $ 0.04 | 0.04 | ---- | ---- | ---- |
| U.B.C. & J.A. INT'L | $ 0.06 | 0.06 | ---- | ---- | ---- |
| N.Y.D.C.C. LABORS/MGT. | $ 0.10 | 0.10 | ---- | ---- | ---- |
| TOTAL PER HOUR | $19.13 | 19.13 | ---- | ---- | ---- |

| | | | | | |
|---|---|---|---|---|---|
| VACATION | $ 2.05 | 2.05 | ---- | ---- | ---- |
| SUPPLEMENTAL FUNDS | $ 0.04 | 0.04 | ---- | ---- | ---- |
| U.B.C. & J.A. INT'L | $ 0.06 | 0.06 | ---- | ---- | ---- |
| N.Y.D.C.C. LABOR/MGT. | $ 0.10 | 0.10 | ---- | ---- | ---- |
| TOTAL PER HOUR | $12.79 | 12.79 | ---- | ---- | ---- |

| | 01/01/99 | 07/01/99 | 01/01/00 | 07/01/00 | 01/01/01 |
|---|---|---|---|---|---|
| WELFARE | $ ---- | ---- | ---- | ---- | ---- |
| PENSION | $ ---- | ---- | ---- | ---- | ---- |
| ANNUITY | $ ---- | ---- | ---- | ---- | ---- |
| A.J.R.E.I.F. | $ ---- | ---- | ---- | ---- | ---- |
| VACATION | $ ---- | ---- | ---- | ---- | ---- |
| SUPPLEMENTAL FUNDS | $ ---- | ---- | ---- | ---- | ---- |
| U.B.C. & J.A. INT'L | $ ---- | ---- | ---- | ---- | ---- |
| N.Y.D.C.C LABOR/MGT. | $ ---- | ---- | ---- | ---- | ---- |
| TOTAL PER HOUR | $ ---- | ---- | ---- | ---- | ---- |

The Pension, Vacation and Annuity Fund contribution rates for Apprentices are based upon 50% of the Journeyman rate.

(A)  Any person directed to appear at a job site shall be guaranteed four (4) hours pay by the Employer if the employee appears prepared to work prior to 8:00 a.m. of the workday in

14

question.  Any employee who has worked for an Employer at a job site shall be deemed to have been directed to report to that job site on the following "workday" unless the employee has been actually directed to report to another job site the preceding "workday" or laid off the preceding "workday".

(B)  Employees covered by this Agreement shall be given one hour's notice before being discharge or laid off, and in either event they shall be fully paid at once in cash, or by insured check, under the conditions set forth in **Section 1** of this **Article**. This does not apply to any temporary suspension of work for reasons beyond the control of the Employer.  A temporary suspension of work, as herein set forth, shall mean a cessation of work which shall not exceed a total of two (2) days.  In the event employees are laid off and have not been paid, a check shall be forwarded by Special Delivery, postmarked the following day, to each Employee. When an Employer fails to deliver a check by Special Delivery postmarked the following day, the Employer shall thereafter, during the term of this Agreement, make cash payments of all wages due on the job site at the time of the layoff.

(C)  Wages shall be paid weekly on the job before 3:30 p.m., said wages to be paid at the Employer's option, either in cash, in envelopes, upon the outside of which shall be plainly marked the Employer's name, the employee's name and number, Social Security

15

numbers, the hours worked and the amount of money enclosed, or by check provided:

1.  The check is a Todd Insured A.B.C. System Payroll Check, or similar type of check, containing above information as on pay envelope, and that delivery of the checks to the Employee shall be made at least on the day preceding a banking day. Any deductions now or hereafter required by law shall also be itemized on the checks when issued.

2.  The Employer has agreed to comply with the provisions of **Article XI** relating to bonding. Any deductions from wages now or hereafter required by law shall also be marked on face of pay envelope. If employees are not paid as specified above, double time shall be paid for the pay day between the hours of 3:30 p.m. and 5:30 p.m. and single time for working time thereafter, until paid, not exceeding fourteen (14) hours; provided, however, that the employees report to and remain on the job during the said fourteen (14) hours.

(D) If any check provided by an Employer to an employee covered hereunder is returned by the Employer's bank, the Employer shall, within twenty-four (24) hours of notice of the bank's

refusal to make payment, deliver to the employee, at the employee's home, the full amount due the Employee in cash as well as Fifty ($50.00) Dollars in cash as liquidated damages to reimburse the employee for injuries incurred due to the failure of the Employer's bank to honor the check.

## ARTICLE VII

## CLASSIFICATION OF INDUSTRY

Individuals, firms and corporations signing this Agreement as Employers shall be defined in three classifications as follows:

1. Contractors

2. Trade Shops

3. Dealers

For the purpose of this Agreement, these are defined as follows:

1. Contractors: Those concerns who are, or may be, primarily engaged in the business of selling floor covering and who employ labor for installation of same direct from the Union or who contract and/or who subcontract for the direct installation of flooring materials and/or other material covered by **Article I** of this Agreement.

2. Trade Shops or Workrooms: Those concerns who are primarily engaged in the selling of any type of Floor or

17

Wall Coverings, but who contract to perform only the labor of installation of same for Dealers and Contractors only, and employ in this installation only members of the Union.

Once an award is given to a TRADE SHOP or WORKROOM from a Contractor or a Dealer, then this same TRADE SHOP or WORKROOM shall not re-subcontract the same award to another TRADE SHOP or WORKROOM who is a non-signatory contractor to this Agreement. To do so is in violation of this Agreement.

3. Dealers: Those concerns engaged in the selling of Floor and Wall Coverings, and who engage TRADE SHOPS or WORKROOMS for the installation of the materials they sell.

### ARTICLE VIII

### JOB REFERRAL

The Employer agrees to report to Local 2287, UBCJA, the location or jobsite of each contract job to be performed by the employer no less than seventy-two hours after the award and no less than seventy-two (72) hours prior to the commencement of the job, where practical. Repeated non-reporting of jobs shall occasion referral of the defaulting Employer to the Hardship and Advisory

Committee as provided herein.

(A)  The designated representative of the Union, as well as all Business Representatives of Local 2287, UBCJA, shall have access to the job site, warehouse and any other business location of the Employer at all times.

(B)  The Employer shall have the right to hire the Foreman.

(C)  The First Mechanic on the job shall be referred by Local 2287, UBCJA.   The Second Mechanic shall be the Employer's selection.   The balance shall be 75% referred from Local 2287 and 25% from the Employer, with preference to Local 2287 members.   The Union will cooperate in order to meet all legal requirements, and furnish qualified mechanics when requested.

(D)  Nothing in this **section** shall restrict an Employer's right to discharge an employee for just cause.   If the employee so discharged or rejected was obtained from Local Union No. 2287, the employee shall be replaced from Local Union No. 2287 to maintain the ratio established above in **Section C.**

> (1)  The Employer shall serve written notice to Local 2287 and a copy of such notice to the affected employee by certified mail, return receipt requested, to Local 2287, and to the employee postmarked within forty-eight (48) hours of the action taken.

19

(2)    Any employee who has been terminated, regardless of the reason for termination, must be paid all monies due through the day of the termination, including reimbursement for any outstanding claims for expenses. Failure of the Employer to comply with any provision of this **Section** shall negate the termination or rejection and entitle the employee to be paid as if he was working for that time period of time until the breach of this **Section** is satisfied.

(3    In any case of rejection or discharge, the Employer shall notify Local 2287, as provided herein, of the time and date of discharge or rejection and shall specify, in writing, the reason(s) therefor.

(4)    The Employer shall retain the right to reject any job applicant referred by Local 2287 provided that the Employer can prove reasonable basis for said rejection.

(5)    It shall be presumed hereunder that the first person referred to a job site by Local 2287 shall be the Steward unless Local 2287 provides information to the contrary.

(6)    No Steward may be required to serve as a Leadman or

20

Foreman on the job.

(E) The Union shall establish and maintain an open employment list for the referral for employment of competent and qualified workers.

(1) Applicants for referral through the Union may register provided they have the necessary skill and experience to perform the job. Such skill and experience is presumed in case of:

(a) Journeyman Applicants who have been employed for substantial periods of time in the job applied for within two years prior to the date they seek referral in the geographical area covered by this Agreement;

(b) Apprentices who are currently required to attend the Apprenticeship School; and

(c) Apprentices who have successfully completed the full apprenticeship program.

(2) Other applicants who seek to register for referral must pass a competency test given by a Joint Union-Employer Testing Board to be established under this Agreement. Any applicant who fails to pass the test shall have the right to appeal to an Appeal Board composed of two members appointed by the

21

Association and two members appointed by the Union. Such an appeal must be in writing and addressed to the Union within ten (10) days after the sending of notice of failure. In the event of a deadlock in the Appeal Board, the matter shall be referred to the Arbitrator designated hereunder.

(F) The following criteria shall be considered in referring applicants to jobs:

(1) Seniority with employers in contractual relationship with the Union;

(2) Requests from employers for specific workpersons, including those recently laid off;

(3) Competency and experience in performing the particular job to which referral is being made;

(4) Need for the job, including periods of unemployment.

(G) The Employer and the Union shall post in places where notices to employees and applicants for employment are customarily posted, all provisions relating to the functioning of the hiring arrangements.

(H) Unless this Agreement specifically requires the use of a Foremen on a particular job, the Employer may not use an apprentice on the job without first notifying Local Union 2287. When a

22

Foreman is required to be on a job, or the Employer chooses to use a Foreman, the Employer shall maintain a ratio of one apprentice for each four (4) Journeymen employed.  A Journeyman may not be substituted for an apprentice in this ratio nor may an apprentice be substituted for a Journeyman without specific permission from Local 2287 permitting such substitution.  Once an apprentice is hired in conjunction with a Foreman on a job, he/she shall be retained on the job until its completion unless he/she is discharged for just cause or Local 2287 grants permission, based on the exigencies of job, to layoff the apprentice.

(I)   The Employer shall provide on a monthly basis, in writing, a list of persons employed to perform work within the jurisdiction described in the Agreement, as well as their hours and days worked to Local 2287.

(J)   Upon request of a representative of the Union and/or Local 2287, the Employer shall supply a list of jobs and the names and addresses of the persons who worked on each job for the month immediately preceding the request.

## ARTICLE IX

### GENERAL FOREMAN, FOREMAN, LEAD PERSON

(A)  Where a job consists of 1,500 yards of reasonably continuous installation, 15,000 square feet of tile installation or

23

15,000 linear feet of base installation, a Foreman must be employed.

(B) On each job where there is no working Foreman, the Employer shall appoint an individual to act as lead person. The Employer shall have the responsibility of advising the Steward as to who the lead person is. The lead person shall receive a Journeyman's wages. It will be the function of the lead person, and where there is no working Foreman, to pass directions on to the individuals working pursuant to the terms of this Agreement.

(C) The persons appointed as Steward, if qualified, will have the highest seniority on any particular job and will be the last person laid off from any particular job and the first person rehired when, and if the job resumes. The Steward shall be appointed by the Union and there shall be a Steward for each shift.

(D) On each job where the Employer employs in excess of twenty (20) people who are covered by this Agreement, it shall retain an individual known as General Foreman, to direct the working force.

## ARTICLE X

### Welfare, Pension, Vacation, Annuity, Apprenticeship, Journeymen Retraining Educational and Industry Fund and Supplemental Funds, U.B.C. & J.A. Funds New York City and Vicinity Labor-Management Cooperation Fund

24

(A)   Every Employer covered by this Agreement shall contribute Employer contributions for each hour worked of all employees covered by this Agreement and employed by said Employer within the territory of this Agreement in the amounts hereinafter specified to the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, U.B.C. & J.A. Fund and Apprenticeship, Journeymen Retraining, Education and Industry Fund, Supplemental Funds of the District Council of New York City and Vicinity and the New York City & Vicinity Labor-Management Cooperation Fund. Each Employer's books and payroll records, including cash disbursement records, shall be made available upon demand of the Trustees at all reasonable business hours.

The Employer realizes that the failure of any Employer to make the required fringe benefit fund contributions affects the liability of all Employers to this agreement and decreases the benefits available to the covered employees of the Employer. Therefore, the Employer to this Agreement shall make available to the Trustees of the various Fringe Benefit Trust Funds, or their designated auditing representatives, all pertinent books and records, including all cash disbursement records, required for an audit to enable said auditor to ascertain and independently verify that the proper contributions hereunder have been paid and such records will be produced whenever deemed necessary by the Trustees

25

in connection with the proper administration of their fiduciary responsibilities. In order to accomplish this end, it is specifically agreed that should any affiliate or subsidiary Employer as described in this Agreement be involved with the business activities of this Employer that this Employer will make available all the pertinent books and payroll records of such affiliate or subsidiary to the auditor so that a complete audit can be made. The extent of the audit and the determination as to what pertinent records are necessary to complete the audit is in the sole discretion of the Employer/Union Trustees so that they may independently verify that all required contributions have been made and discover the identity of all beneficiaries under the plans that they have been entrusted with for proper administration.

When Auditors are sent to audit the books of any Employer, General Contractor, Prime Contractor, Builder or Subcontractor and a definite appointment is scheduled, when the Auditor or Auditors cannot start at the appointed time and date and must return, or when valid payroll records are not furnished, then the said Employer, General Contractor, Prime Contractor, Builder or Subcontractor shall be penalized and pay the sum of $100.00 per Auditor, to cover the expense of the Auditor or Auditors. It shall be a violation of this Agreement for any Employer, bound by this Agreement, to fail to furnish proper records when requested, for

26

the purpose of completing an audit. The Union shall have the right to remove all its members from the offending Employer upon twenty-four (24) hours' notice. If such men who are removed remain on the jobsite during regular working hours, they shall be paid for lost time not to exceed three (3) days' pay.

(B) Contributions to the New York City District Council of Carpenters Welfare, Pension, Vacation, Annuity, U.B.C. & J.A. Fund, Apprenticeship, Journeymen Retraining, Educational and Industry Fund, New York City District Council Of Carpenters Joint Labor Management Cooperation Trust Fund and Supplemental Funds shall be in accord with this Agreement. The contribution to the Supplemental Funds shall be allocated in the following manner:

Carpenters Relief and Charity Fund
TWO AND ONE - HALF CENTS ($0.025) PER HOUR

District Council Scholarship Fund
ONE-AND-ONE-HALF CENTS ($0.015) PER HOUR

The purpose of the Carpenters Relief and Charity Funds is to enable the parties to make charitable donations in the name of the carpentry industry from time to time. Said donations shall be made to duly recognized tax exempt institutions within the meaning of the Internal Revenue Code and to provide emergency assistance to bona fide victims of disaster, catastrophe and community projects for the good of the general public. The contributions shall be included in the payment of the Fringe Benefit Stamp. The Fund

27

shall be administered by two persons, one designated by the Union and the other by the Employer Associations. Both shall serve without pay and shall be bonded to the extent required by law. All monies received by the Fund shall be deposited in a bank selected by the two administrators and shall be disbursed only by check signed by both administrators. At least once a year the entire balance of the Fund on hand shall be disbursed to organizations and persons who meet the qualifications set forth above. The administrators shall keep such books or records as may be necessary. Once a year the administrators shall account for all monies received and disbursed.

The Supplemental Funds shall be established in accordance with applicable law, and any Employee's authorization that is required shall be secured by the Union.

It is agreed that all contributions are due and payable to the District Council Fund Office as called for in this Agreement for the other fringe benefit funds and the Employer does hereby authorize said area Fund Office to forward said contributions to the Fund Office in such manner as the Trustees of said fund shall reasonably require.

The parties also recognize their right to be represented on the New York State Carpenters Labor-Management Committee and by the execution of this Agreement the parties authorize the

representatives of the participating employers and Carpenter Unions to designate their respective Union and Employer Trustees hereby waiving all notice thereof and ratifying all actions taken by them within the scope of their authority.

Effective July 1, 1996 the parties to this Agreement recognize the New York City and Vicinity Carpenters Joint Labor Management Cooperation Trust Fund. The Committee will be funded by contributions of ten cents (0.10) per hour paid through the Trust Funds Stamp Plan. Said donations shall be made in accordance with all applicable Federal and State Laws pertaining thereto.

The Contractor and the Union acknowledge that they are represented by their duly designated Trustees to administer the various Fringe Benefit Trust Funds provided for in this contract. Because of the various liabilities and responsibilities placed upon all parties to this Agreement, including all Employers and Union representatives and their respectively designated Trustees, each Employer hereby agrees that the Fringe Benefit Fund Trustees shall have the necessary powers to fulfill their fiduciary obligations in order to fully protect each Contractor signed to this Agreement and their employee-beneficiaries under the respective fund plans.

(C) When any Employer sends its employees to work in any locality outside the geographical jurisdiction as listed in **Article II** of this Agreement, it shall forward all fringe benefits for the

29

members of Local Union 2287 to the New York City District Council of Carpenters Fringe Benefit Funds' office, and credit same to the Employer's account where required; provided, however, should the Employer be required by the Collective Bargaining Agreement with the District Council and/or Local Union outside the jurisdiction of the New York District Council to make contributions and upon proof of such payment, deduct the same from the total contributions for the reporting period due to the New York District Council.

(D)  Each Employer shall be bound by all of the terms and conditions of the Agreements and Declarations of Trust, creating the Welfare and Pension Funds, as amended, and the Agreements and Declaration of Trust, creating the Vacation Fund, Annuity Fund, U.B.C. & J.A. Fund and Apprenticeship, Journeymen Retraining, Educational and Industry Fund, the New York City and Vicinity Carpenters Joint Labor Management Cooperation Trust Fund and Supplemental Funds, as amended, and by all By-Laws adopted to regulate each of said Funds. The Trustees of the Funds shall secure the approval of the Treasury Department under the applicable provisions of the Internal Revenue Code and shall amend the same, if necessary, to secure such approval, so as to qualify the Employer-contributions as deductions for Federal Income Tax purposes.

(E)  It is agreed that no contributions to any of the Funds as

30

specified in this **Article** shall be required on the premium portion of wages.   For the purposes of these **Sections** only, all hours worked shall be regarded as straight-time hours.

(F)   Whenever the Employer is in default in payments to the Fringe Benefit Funds referred to in this **Article** of the Agreement, and reasonable notice of not less than seventy-two (72) hours of such default is given to the Employer, if the payments are not made, the Union may remove its members from the work of such Employer.   If such members who are removed remain at the jobsite during regular working hours, they shall be paid for lost time not to exceed three (3) days' pay.

(G)   In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s), in accordance with the judgement of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:

(1) the unpaid contributions; plus

(2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus

(3) an amount equal to the greater of --

(a) the amount of the interest charges on the

unpaid contributions as determined in (b)
above, or

(b) liquidated damages of 20% of the amount of
the unpaid contributions; plus

(4) reasonable attorney's fees and costs of the action;
and

(5) such other legal or equitable relief as the court deems
appropriate.

In the event that proceedings are instituted before an arbitrator under **Section H** of this **Article** to collect delinquent contributions to Benefit Fund or Funds, and if such arbitrator renders an award in favor of such Fund(s), the arbitrator shall be empowered to award such interest, liquidated damages, and/or costs as may be applicable under the Agreement and Declaration of Trust establishing such Fund(s).

(H) Should any dispute or disagreement arise between the parties hereto, or between the Union and any Employer-member signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder by filing a notice of intent to arbitrate in writing with said impartial arbitrator, and serving a copy of said notice on the Association or the Union, as the case

32

may be.  Unless a waiver is mutually agreed to in writing by the parties hereto, a hearing shall be convened within twenty (20) days of submission and the arbitrator shall submit his award within twenty (20) days after the close of the hearing.  The arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy including, but not limited to, monetary damages.  The arbitrator's award in this regard shall be final and binding upon the parties hereto and the individual Employer, if any, and shall be wholly enforceable in any court of competent jurisdiction.  The cost of the arbitration, including the fees to be paid to the arbitrator shall be included in the award and shall be borne by the losing party.

Roger Maher, Joseph W. Lipowski, Robert Silagi or Robert Herzog is hereby designated as impartial arbitrator(s) hereunder.

The agreement of the parties to submit said matters regarding the payment of contributions to an arbitrator does not excuse the Employer from any statutory, civil or criminal liability which may attach to his actions under Municipal, State or Federal law.  The submission of a matter to arbitration is in no way meant to affect the right of the Union to remove its members from an Employer's premises, as provided for in this Agreement.

(I)  A stamp plan has been established which provides for the

payment of contributions to the Welfare, Pension, Vacation, Annuity, U.B.C. & J.A. Fund, A.J.R.E.I.F., the New York City and Vicinity Carpenters Joint Labor Management Cooperation Trust Fund and Supplemental Funds pursuant to a consolidated stamp, including the filing of the monthly summary report with the Fund office. The Employer will comply with procedures established by the Benefit Fund Trustees to assure that the employee receives the consolidated stamp together with his/her pay. The stamps shall be purchased through facilities established by the Bank of New York or such other agencies authorized by the Trustees.

## ARTICLE XI

### BONDING

(A) Every employer engaged in Building Construction and Commercial work, whether indoors or outdoors, covered by this Agreement, shall provide a Surety Bond to guarantee payment to the respective Funds for all fringe benefits. Bonds shall be in the following amounts:

| NUMBER OF MEMBERS OF BARGAINING UNIT | AMOUNT OF BOND |
| --- | --- |

```
          1 to 5              $  5,000.00
          6 to 10              10,000.00
         11 to 15              15,000.00
         16 to 25              25,000.00
         26 to 50              50,000.00
         over 50              100,000.00
```

(B)   The Trustees of the Funds specified in this Agreement have the right to request any Employer to increase the amount of their Surety Bond whenever they deem it necessary for the protection of said Funds specified in this Agreement.

(C)   The District Council, in its discretion, may suspend the requirement for the Employer to maintain the bond provided for in this Article provided that the District Council is satisfied that the Employer is not presently delinquent in payment of fringe benefit contributions and has a favorable history of making fringe benefit contributions on a timely basis.   In the event that the District Council gives an unfavorable response to the request of the Employer to suspend such bond requirement, the Employer shall have the right to appear before the Board of Trustees for the Fringe Benefit Funds to review its application for suspension of this contract requirement.

## ARTICLE XII

## MISCELLANEOUS CONDITIONS

(A)   Only persons covered by this Agreement may perform work

35

covered within the jurisdiction of this Agreement.

(B) If employees who are subject to this Agreement are withdrawn upon the orders of their International Officers or of the Union, or of Local 2287, it shall not be considered a violation of this Agreement.

(C) Reimbursement for the loss of tools or clothing shall be paid not to exceed:

Tools...................$450.00

Overcoat...............$150.00

Other Clothing.........$150.00

Shoes..................$ 75.00

The Employer shall furnish a suitable tool and clothing locker. The locker shall have the door hinged in such a way that the hinges cannot be taken off while the door is closed without breaking the door.

(D) The Employer agrees that it will be responsible and liable for payments of all wages and fringe benefits for any Subcontractor who is engaged by the Employer to perform work that falls within the jurisdiction, as set forth herein, of the District Council.

(E) It shall be mandatory upon the General or Prime Contractor or Builder to notify the District Council within thirty (30) days of an award and prior to the start of work, that a

subcontract necessitating employment of members of the District Council has been awarded. Included in this notification shall be the name and address of such subcontractor and location of job site.

(F) Each party hereto agrees that neither the Union nor any Employer will discriminate, in any manner, against any individual by reason of race, color, creed, national origin, citizenship, age, sex, or affectional preference, Union membership or non-membership, or Union activity as defined in applicable federal, state or local laws. For the purposes of this **Article**, "citizenship status" means the citizenship of any person, or the immigration status of any person lawfully residing in the United States who is not a citizen or national of the United States.

(G) Any employee required to work during the lunch period shall be paid one-half (½) hour at the overtime rate and shall be allowed one-half (½) hour to eat lunch.

(H) When an Employer enters into a Joint Venture with an Employer who is not bound by this Agreement, then said Joint-Venturers shall sign an Agreement as Joint Venturers with the Union. Each joint venture shall comply with the Bonding provisions in **Article XI, Section 1.**

(I) Each Joint-Venturer shall furnish a new Surety Bond covering said Joint Venture or furnish the Union with a Rider from

their respective insurance carriers, confirming that their respective Surety Bond protects the Fringe Benefit Funds during the period of said Joint Venture.

(J)  Where, for the benefit of an Employer, an employee must cross a body of water to reach the jobsite and there is no public transportation available to said site, then it shall be the duty of the Employer to provide adequate safety and comfort for the employee's transportation.  The Employer shall protect such employee under a policy of public liability insurance or any other insurance required by law for any public conveyance.  Such certificate shall be posted in a conspicuous place, on any conveyance used by the Employer.  Should such transportation, whether public or private, require extraordinary fare, such fare shall be paid by the Employer.  The employee shall not leave the shore opposite the jobsite earlier than 8:00 a.m. and shall return to the same shore not later than 3:30 p.m.

(K)  There shall be no loss in wage time to an employee on the day of injury when medical attention is required to said employee while working on the Employer' job, provided that the employee submits a note from the Doctor or Clinic, stating that the employee cannot work that day.

(L)  The Employer agrees that it will not subcontract any work covered by this Agreement which will in any way, either directly or

38

indirectly result in a lessening or lowering of the payment of wages, fringe benefits or working conditions provided herein.

(M)   All work covered by this Agreement shall be contracted or subcontracted only to an employer who is signatory to a collective bargaining agreement with the Union.   The parties hereto mutually agree with respect to such work falling within the scope of this Agreement that is to be done at the site of construction, alteration, maintenance, or repair of any building, structure, or other works, that if the Employer should contract or subcontract any of the aforesaid works falling within the trade jurisdiction of the Union as set forth herein, said Employer agrees that it will not sub-contract any work covered by this Agreement which will in any way, either directly or indirectly result in a lessening or lowering of the payment of wages, fringe benefits or working conditions provided herein.

(N)   The Contractor further agrees that, upon receiving written notice from the Union that its subcontractor is delinquent in payment of wages, or the payment of any of the fringe benefits called for herein, such Contractor will withhold from any Funds in its possession which are or which may be due to said subcontractor until it receives further notice from the Union that the subcontractor delinquencies have been paid.

(O)   In order to protect and preserve for the employees

39

covered by this agreement all work historically and traditionally performed by them, and in order to prevent any device or subterfuge to avoid the protection or preservation of such work, it is hereby agreed that if and when the Employer shall perform any work on a job site of the type covered by this agreement as a single or joint Employer (which shall be interpreted pursuant to applicable NLRB and judicial principles) within the trade and territorial jurisdiction of the Union, under its own name or under the name of another, as a corporation, sole proprietorship, partnership, or any other business entity including a joint venture, wherein the Employer (including its officers, directors, owners, partners, or stockholders) exercises either directly or indirectly (such as through family members) controlling or majority ownership management or control over such other entity, the wage and fringe benefit terms and conditions of this agreement shall be applicable to all such work performed on or after the effective date of this Agreement.  The foregoing shall not be interpreted to apply to separate employer situations.  It is not intended that this **Article** be the exclusive source of rights or remedies which the parties may have under State or Federal laws.

(P)  The following listed tools, which are considered as Shop Equipment, shall be furnished by the Employer when decided by the Employer that they are necessary for a specific job:

40

1.   Power Stretcher
2.   Tile Cutter
3.   Blow Torch Tank or Tanks
4.   Electric Drill
5.   Roller - except Hand or Wall
6.   Cleaning Equipment
7.   Electric Stapler
8.   Spray Machine or Mask

(Q)  The Employer agrees to abide by all OSHA Regulations when supplying Employees with safety equipment and ventilating work areas.

(R)  If an employee is required to use Powder Actuated tools he is to be qualified to use said Powder Actuated Tools by securing from the Tool Manufacturer an Operator's Card or similar proof of qualification, and the Union shall cooperate with the Employer and Tool Manufacturer in having the employee expeditiously qualified. No Powder Actuated Tools shall be used that have not been previously approved by the State Board of Standards and Appeals.

## ARTICLE XIII

## GRIEVANCE AND ARBITRATION

(A)  All complaints, disputes and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, or in the event there shall exist any claim, demand, dispute or controversy between the parties hereto, excluding the merits of jurisdictional dispute, i.e., a

dispute with another trade over the assignment of work, the parties hereto shall first attempt to settle and adjust such dispute, claim, demand or controversy by negotiation.

(B)  Any grievance not resolved pursuant to (A) above, shall be submitted to arbitration before Roger Maher, Joseph W. Lipowski Robert Silagi or Robert Herzog or George Friedman who shall serve as the permanent contract arbitrator hereunder.  The arbitrators shall conduct a hearing in such manner as he shall consider proper and shall serve as sole arbitrator of the dispute between the parties.  The arbitrator shall have the right to conduct an ex parte hearing in the event of the failure of either party to be present at the time and place designated for the arbitration, and shall have the power to render a decision based on the testimony before him at such hearing.  The decision of the arbitrator shall be final and binding upon both parties and may be entered as a final decree or judgment in the Supreme Court of the State of New York or in a court of appropriate jurisdiction in any state where such decision shall be rendered.  The costs of the arbitration, including the arbitrator's fee shall be borne equally by the Employer and the Union.  It is the intent of the parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration and that no defense to prevent the holding of the arbitration shall be permitted.  Service

42

of any documents or notice referred to above, or service of any notice required by law in connection with arbitration proceedings may be made by registered or certified mail. Service upon the Employer may be made on either the individual Employer or the Employer.

## ARTICLE XIV

### GREATER NEW YORK FLOOR COVERERS INDUSTRY

### PROMOTIONAL FUND

The Employer covered shall contribute to the Greater New York Floor Coverers Industry Promotional Fund an amount equivalent to one-half (½) of one (1%) percent of the employee's hourly wages and fringe benefits for every hour worked by the employees of said Employers, whenever engaged in Floor Covering whatsoever.

The Benefit Fund Office of the District Council shall advise the Union and the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUND whenever an Employer shall be in default in the payment of contributions due the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUND.

Each Employer shall be bound by all the terms and conditions of the Agreement and Declaration of Trust by and between each signatory of this Agreement, creating the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUND and all By-Laws adopted to

43

regulate said Fund.

All Employer-contributions to the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS shall be remitted monthly with the stamp plan contributions for the Benefit Fund.  The bank servicing the Benefit Funds shall deliver all such contributions to the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS, after verifying that the amount of each such contribution has been correctly computed by the Employer.

The GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS shall reimburse the Carpenters Fringe Benefit Funds for all expenses incurred by it.

The Fund and all payments thereunder may not be used for lobbying in support of anti-labor legislation and for any purpose contrary to the interest of the District Council nor for subsidizing of any contractor during periods of work stoppages or strike.

There shall be established by this Agreement, a Joint Review Committee, consisting of two (2) members appointed by the District Council, and two (2) members appointed by the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS, whose duties, among other things, shall be to periodically review any increase or decrease in the amount of the Surety Bonds as the case may be, or in the event of a default in the terms and conditions of the

44

Collective Bargaining Agreement by a Contractor, signatory to this Agreement, when engaged in Floor Covering as defined in **Article I**, where a new, different, or additional Bond is required or necessary, and to perform such other duties and services as may serve to upgrade and maintain the standards of proficiency of Floor Covering, and to create greater work opportunities for members of the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America.

## ARTICLE XV

### SAVINGS CLAUSE

If the Courts should decide that any clause or part of this Agreement is unconstitutional or illegal, or should any clause or part of this Agreement be found contrary to present or future laws, it shall not invalidate the other portions of this Agreement, it being the sole intent and purpose of this Agreement to promote peace and harmony in the Industry as permitted by Law.

## ARTICLE XVI

### Expiration and Automatic Renewal

This Agreement shall be binding on the Employer and the Union, their successors and assigns. The duration of this Agreement shall continue until July 1, 2001 and shall be renewed automatically for

45

one year intervals thereafter unless notice to the other at their last known address has been provided by either party by certified and regular mail no more than ninety (90) days nor no less than sixty (60) days before the contract expiration that such party seeks to negotiate a new contract or modify or amend this Agreement through negotiations. Once negotiations have commenced, neither party will seek to alter unilaterally the terms or conditions of employment of employees covered by this Agreement until such terms have been changed by execution of a newly negotiated agreement.

## ARTICLE XVIII

### EFFECTUATING CLAUSE

The parties hereto make and enter into this Agreement, in witness whereof, we, their duly authorized and empowered representatives, have hereunto set our hands and seal this 20th day of November, 2003  .

For The Employer: **PITKIN CARPET INCORPORATED**

By: _____, pres.          _Reza Rezvani_
　　(Officer's Signature & Title)              (Print Name)


For the Union:

DISTRICT COUNCIL OF NEW YORK CITY
AND VICINITY OF THE UNITED BROTHER-
HOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO.

By: _____


The party of the First Part, herein referred to as the Employer, signatory to this Agreement, hereby acknowledges receipt of copies of the Agreement and Declaration of Trust of the New York City District Council of Carpenters Welfare Fund; Pension Fund; Apprenticeship, Journeymen Retraining, Educational and Industry Fund; United Brotherhood of Carpenters and Joiners of America Fund; New York City and Vicinity Carpenters Labor Management Fund; Supplemental Funds; Annuity Fund; and Vacation Fund.

**PITKIN CARPET INCORPORATED**

By: _____ pres.          11/20/03
　　(Officer's Signature & Title)              (Date)

Acknowledgment of Promotional Fund Contribution:

Apprenticeship, Journeyman Retraining, Educational and Industry Promotional Fund


By: _____

　　　　　　　　　　　　　　　or

Greater New York Floor Coverers Industry Promotional Fund


By: _____

50

-----------------------------------------------------------------x

In the Matter of the Arbitration between:

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, By MICHAEL
FORDE and PAUL O'BRIEN, as TRUSTEES, THE NEW
YORK CITY AND VICINITY CARPENTERS LABOR-
MANAGEMENT CORPORATION, and MICHAEL J.
FORDE, as EXECUTIVE SECRETARY- TREASURER,
DISTRICT COUNCIL FOR NEW YORK CITY AND
VICINITY, UNITED BROTHERHOOD CARPENTERS
AND JOINERS OF AMERICA.

        **NOTICE OF**
        **INTENTION TO**
        **ARBITRATE**

-and-

Pitkin Carpet Incorporated.
-----------------------------------------------------------------x

PLEASE TAKE NOTICE, that the NEW YORK CITY

DISTRICT COUNCIL OF CARPENTERS PENSION FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS WELFARE FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS VACATION FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS APPRENTICESHIP,

JOURNEYMAN RETRAINING, EDUCATION AND INDUSTRY FUND, NEW

YORK CITY DISTRICT COUNCIL OF CARPENTERS CHARITY FUND, by MICHAEL J.

FORDE, and PAUL O'BRIEN as TRUSTEES, THE NEW YORK CITY AND VICINITY

CARPENTERS LABOR- MANAGEMENT CORPORATION, (collective know as the "New York

District Council of Carpenters Benefit Funds") and MICHAEL J. FORDE, as EXECUTIVE

SECRETARY-TREASURER, DISTRICT COUNCIL FOR NEW YORK  CITY AND VICINITY,

UNITED BROTHERHOOD CARPENTERS AND JOINERS OF AMERICA, hereby demand and

**EXHIBIT**
2

intend, pursuant to the provisions of the collective bargaining agreement between Pitkin Carpet

Incorporated and the District Council for New York City and Vicinity of the United Brotherhood of

Carpenters and Joiners of America, to conduct an arbitration before Arbitrator Robert Herzog, Esq.

against Pitkin Carpet Incorporated with the respect to the following controversy:

     To compel to permit the Funds to conduct an audit of its books and records for

the period 1/1/2004 through date to determine whether is in compliance with

its obligation to contribute to the Funds.

     Pursuant to CPLR 7503 (c), unless you apply within twenty (20) days after the

service of this notice for a stay of the arbitration, you will thereafter be precluded from

objecting that a valid agreement was not made or has not been complied with and from

asserting in court the bar of limitations of time.


Dated:    October 26, 2007


                      By:
                      Steven C. Kasarda, Esq.
                      Counsel for Delinquencies & Collections,
                      New York District Council of Carpenters
                      Benefit Funds


To:     Robert Herzog, Esq.
        36 Springhouse Road
        Woodcliff Lake, New Jersey 07677

        and

        Pitkin Carpet Incorporated               Cc: O'Dwyer & Bernstien, LLP
        368 Gunhill Road                   52 Duane Street
        Bronx, NY 10467                  New York, NY 10007
        Attn: Ms. Reza Rezvani, President      Attn: Mr. Gary Silverman, Esq.

VIA CERTIFIED MAIL(7005 3110 0000 9762 0328)     (7005 3110 0000 9762 0007)
RETURN RECEIPT REQUEST  (To Employer)

# Robert Herzog, Esq.

*Arbitrator*

P.O. Box 25
Hillsdale, New Jersey 07642
(201) 930-1231

October 29, 2007

**Pitkin Carpet Incorporated**
**Attn: Ms. Reza Rezvani, President**
**368 Gunhill Road**
**Bronx, New York 10467**

Re: Employer: Pitkin Carpet Incorporated

Union: Michael Forde, as Executive Secretary-Treasurer, District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America

Funds: New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Welfare Fund, New York City District Council of Carpenters Vacation Fund, New York City District Council of Carpenters Annuity Fund, New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund, New York City District Council of Carpenters Charity Fund, United Brotherhood of Carpenters and Joiners of America Fund and New York City and Vicinity Carpenters Labor - Management Corporation, by Michael J. Forde and Paul O'Brien, as Trustees

<u>Issue</u>: Pitkin Carpet Incorporated <u>Audit of Books and Records</u>

## Hearing Date: November 13, 2007    Hearing Time: 11:20 A.M.

In accordance with the terms of the existing collective bargaining agreement between the Employer and the Union, an arbitration hearing will be held on the date and time indicated concerning the claim that Pitkin Carpet Incorporated has failed to permit the Funds to conduct an audit of its books and records as required by the agreement. The arbitration hearing will be held in the **9th Floor** Conference Room, **District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America**, **395 Hudson Street, New York, New York**.

Your presence at the hearing at the time and date indicated is required and you should be fully ready to proceed. Please bring to the hearing the collective bargaining agreement and any records you deem pertinent.

Very truly yours,

Robert Herzog
Arbitrator

cc: Steven Kasarda., Esq.
   Attorney for the New York District Council of Carpenters Benefit Funds
   Gary Silverman, Esq., O'Dwyer & Bernstien, LLP



**OFFICE OF THE IMPARTIAL ARBITRATOR**
-------------------------------------------X
In The Matter Of The Arbitration

       between

New York City District Council of Carpenters
Pension Fund, New York City District Council of
Carpenters Welfare Fund, New York City
District Council of Carpenters Vacation Fund,
New York City District Council of Carpenters
Annuity Fund, New York City District Council          **DEFAULT**
of Carpenters Apprenticeship, Journeyman
Retraining, Educational and Industry Fund,            **AWARD**
New York City District Council of Carpenters
Charity Fund, United Brotherhood of Carpenters
and Joiners of America Fund and The New York
City and Vicinity Carpenters Labor-Management
Corporation, by Michael J. Forde and Paul
O'Brien, as Trustees
          And
Michael J. Forde, as Executive Secretary-
Treasurer, District Council for New York City
and Vicinity, United Brotherhood of Carpenters
and Joiners of America
                (Petitioners)
   -and-

PITKIN CARPET INCORPORATED
          (Employer)
-------------------------------------------X
BEFORE:  Robert Herzog, Esq.


    Pitkin Carpet Incorporated (hereinafter referred to as the

"Employer") and the District Council of New York City and Vicinity

of the United Brotherhood of Carpenters and Joiners of America, are

parties to Collective Bargaining Agreements, dated July 01, 2001 and

thereafter, providing for arbitration of disputes before the

undersigned Arbitrator as Impartial Arbitrator, and in which the

Employer has therein agreed, for the duration of the agreements, to pay contributions toward employee benefit funds (hereinafter collectively referred to as the "Funds"). The Petitioners, as beneficiaries of the Collective Bargaining Agreements, have standing before the Arbitrator. In accordance therewith, the Petitioners, by an October 26, 2007 Notice of Intention to Arbitrate, demanded arbitration. The Petitioners alleged the Employer failed to permit the Funds to conduct an audit of its books and records for the period of January 1, 2004 through to date to determine whether it is in compliance with its obligation to contribute to the Funds. A Notice of Hearing dated October 29, 2007 advised the Employer and the Petitioners that the arbitration hearing was scheduled for November 13, 2007.

The Notice of Hearing was sent to the Employer by regular and certified mail. The regular mail copy of the Notice of Hearing was not returned to sender and deemed delivered to the Employer. The certified mail copy of the Notice of Hearing was not returned as undeliverable. United States Postal Service records indicate that notice of certified mail was left with the Employer on November 1, 2007 at 1:22 pm. The Employer failed to heed the notice. The Employer is deemed to have received the Notice of Hearing based on the delivery of the regular mail copy and the Employer's voluntary act of not claiming the certified mail copy.

On November 13, 2007, at the place and time designated by the aforesaid Notice of Hearing, Steven Kasarda, Esq. appeared on behalf of the Petitioners. Despite the Employer having been sent notice of the proceeding and the claim against it, no appearance on its behalf was made. Also, no written, mutually agreed upon waiver by the parties to adjourn the proceeding, as required by the Collective Bargaining Agreements, was presented. The arbitration proceeded as a Default Hearing. Full opportunity was afforded the parties present to be heard, to offer evidence, and to examine witnesses. The Petitioners thereupon presented their proofs to the Arbitrator.


The uncontroverted testimony and evidence established that:

- During the January 1, 2004 to date period, the Employer was bound to Collective Bargaining Agreements with the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America.

- The Collective Bargaining Agreements obligated the Employer to make certain payments to Fringe Benefit Trust Funds on behalf of all its carpenter employees pursuant to schedules set forth in the Agreements.

- The Collective Bargaining Agreements authorized the Funds to conduct an audit of the Employer's books and records in order to verify that all the required contributions were made to each of the aforesaid Fringe Benefit Trust Funds maintained by the Funds.

3

- In accordance with this auditing provision, a forensic accountant, employed by the Funds, sought to conduct an audit of the Employer's books and records. In violation of this auditing provision, the Employer did not consent to an audit of the Employer's books and records.

## AWARD

Based upon the substantial and credible evidence of the case as a whole:

1. Pitkin Carpet Incorporated is in violation of the terms of the Collective Bargaining Agreements;

2. Pitkin Carpet Incorporated is ordered to permit and facilitate the Funds conducting an audit of its books and records for the period of January 1, 2004 through to date to determine whether it is in compliance with its obligations to contribute to the Funds;

3. Pitkin Carpet Incorporated shall pay to the Funds forthwith the Petitioners' counsel's fees, the undersigned Arbitrator's fee, and all associated court costs in the following amounts:

| | |
|---|---|
| Court Costs | $ 350.00 |
| Attorney's Fee | 1,500.00 |
| Arbitrator's Fee | 500.00 |
| TOTAL | $2,350.00 |

4. Pitkin Carpet Incorporated shall pay to the District Council Carpenters Benefit Funds the aggregate amount of two thousand

three hundred fifty dollars ($2,350.00) with interest to accrue at the rate of 10% from the date of this Award.

Dated: November 17, 2007

Robert Herzog
Arbitrator

State of New York  )
County of Rockland )

I, Robert Herzog, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

Dated: November 17, 2007

Robert Herzog
Arbitrator

To:  Pitkin Carpet Incorporated
     Attn: Ms. Reza Rezvani, President
     368 Gunhill Road
     Bronx, New York 10467

     Steven Kasarda, Esq.
     New York City District Council Carpenters Benefit Funds
     395 Hudson Street
     New York, New York 10014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND,
NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS
APPRENTICESHIP, JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS CHARITY
FUND, UNITED BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA FUND and THE NEW YORK CITY
AND VICINITY CARPENTERS LABOR-MANAGEMENT
CORPORATION, by MICHAEL J. FORDE, and PAUL
O'BRIEN, as TRUSTEES, and MICHAEL J. FORDE, as
EXECUTIVE SECRETARY-TREASURER, DISTRICT
COUNCIL FOR NEW YORK CITY AND VICINITY,
UNITED BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA,

08 CV_____

08 CV 00869

                                        Plaintiffs,

        -against-

PITKIN CARPET INC.,

                                        Defendant.
-------------------------------------------------------------------X
TO:

        Pitkin Carpet Inc.
        368 Gunhill Road
        Bronx, NY 10467

        **YOU ARE HEREBY SUMMONED** and required to file with the clerk of this court and serve upon

        O'DWYER & BERNSTIEN, LLP
        52 Duane Street
        New York, New York 10007
        (212) 571-7100

an answer to the complaint which is herewith served upon you, within **30 days** after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief
demanded in the complaint.

**J. MICHAEL McMAHON**

_____
CLERK

_____
BY DEPUTY CLERK

_____JAN 2 4 2008_____
DATE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA FUND and
THE NEW YORK CITY AND VICINITY CARPENTERS
LABOR-MANAGEMENT CORPORATION, by MICHAEL
J. FORDE, and PAUL O'BRIEN, as TRUSTEES, and
MICHAEL J. FORDE, as EXECUTIVE SECRETARY-
TREASURER, DISTRICT COUNCIL FOR NEW YORK
CITY AND VICINITY, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

08 CV_____

**COMPLAINT**

Plaintiffs,

-against-

PITKIN CARPET INC.,

Defendant.

-------------------------------------------------------------------X

Plaintiffs ("Benefit Funds"), by their attorneys O'Dwyer & Bernstien, LLP, for their

Complaint allege as follows:

**NATURE OF THE CASE**

1.      This is an action to confirm and enforce an Arbitrator's Award rendered pursuant

to a collective bargaining agreement ("Agreement") between The District Council of New York

City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("Union") and

Pitkin Carpet Inc. ("Employer").

## JURISDICTION

2.     This Court has jurisdiction over this proceeding pursuant to section 301 of the

Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, sections 502(a)(3)(B)(ii), (d)(1),

(e) and (g) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§§1132(a)(3)(B)(ii), (d)(1), (e) and (g), section 515 of ERISA, 29 U.S.C. §1145, and section 9 of

the Federal Arbitration Act, 9 U.S.C. §9.

3.     Personal jurisdiction is based upon Section 502(e)(2) of ERISA, 29 U.S.C.

§1132(e)(2).

## VENUE

4.     Venue is proper in this district in that Plaintiffs' offices are located in this district.

## PARTIES

5.     At all times relevant herein the Plaintiffs were jointly administered, multi-

employer, Taft-Hartley Benefit Funds administered by trustees designated by a union and by

employers, established and maintained pursuant to section 302(c)(5) of the LMRA, 29 U.S.C.

§186(c)(5). Plaintiffs Forde and O'Brien are fiduciaries of the Benefit Funds within the meaning

of ERISA sections 3(21) and 502, 29 U.S.C. §§1002(21) and 1132.

6.     The Benefit Funds are employee benefit plans within the meaning of sections 3(1)

and (3) of ERISA, 29 U.S.C. §1002(1) and (3) and are maintained for the purposes of providing

health, medical and related welfare benefits, pension and other benefits to eligible participants

and beneficiaries on whose behalf they receive contributions from numerous employers pursuant

to collective bargaining agreements between the employers and the Union.

7.     Upon information and belief defendant is a domestic corporation incorporated

under laws of the State of New York with a principal place of business located at 368 Gunhill

Road, Bronx, NY 10467.

8.    The defendant is an employer within the meaning of section 3(5) of ERISA, 29

U.S.C. §1002 (5).

### FIRST CLAIM FOR RELIEF

9.    Defendant was bound at all relevant times by a collective bargaining agreement

with the Union, which, by its terms, became effective July 1, 2001.  Said Agreement provides,

inter alia, that the defendant shall furnish its books and payroll records when requested by the

Benefit Funds for the purpose of conducting an audit to ensure compliance with required benefit

fund contributions and for the submission of disputes to final, binding arbitration.

10.    A dispute arose during the period of the Agreement between the parties when the

Employer failed to comply with the Benefit Funds' demands to furnish its books and records for

the purpose of conducting an audit.

11.    Pursuant to the arbitration clause in the Agreement, the dispute was submitted to

arbitration to Robert Herzog, the duly designated impartial arbitrator.

12.    Thereafter, upon due notice to all parties, the arbitrator duly held a hearing and

rendered his award, in writing, dated November 17, 2007 determining said dispute.  Upon

information and belief, a copy of the award was delivered to the defendant (A copy of the award

is annexed hereto as Exhibit "A" and made part hereof).

13.    The arbitrator found that defendant had failed to comply with the Agreement as it

relates to paying fringe benefit monies and directed it to furnish the Plaintiffs with any and all

books and records, for the period of January 1, 2004 through Novebmer 17, 2007 including but

not limited to, the cash disbursement section of the cash book, general ledger, job location

records, daily time records and all certified payrolls.

3

14.     The arbitrator also found that defendant was required to pay the funds a sum of $2,350.00 pursuant to the Agreement, representing costs incurred in the arbitration.

15.     The defendant has failed to abide by the award.

WHEREFORE, Plaintiffs demand judgment against defendant as follows:

1.     For an order confirming the arbitration award in all respects;

2.     For entry of judgment in favor of the Plaintiffs ordering defendant and its officers to make available to the Plaintiffs or authorized representatives any and all books and records deemed necessary to conduct an audit including, but not limited to, the cash disbursement section of the cash book, general ledger, job location records, daily time records and all certified payrolls for the period January 1, 2004 through Novebmer 17, 2007.

3.     For entry of judgment in favor of the Benefit Funds and against Pitkin Carpet Inc. ordering defendant to pay the Benefit Funds a total sum of $2,350.00 with interest to accrue at the rate of 10% from the date of the award, pursuant to the arbitrator's award.

4.     For attorneys' fees and costs of this action;

5.     For such other and further relief as this court may deem just and proper.

Dated:  New York, New York
        January 23, 2008

ANDREW GRABOIS (AG 3192)
O'Dwyer & Bernstien, LLP
Attorneys for Plaintiffs
52 Duane Street
New York, NY 10007
(212) 571-7100

4

## AFFIDAVIT OF SERVICE THROUGH THE SECRETARY OF STATE

Index #  08 cv 00869                                      Purchased/Filed: January 24, 2008

STATE OF NEW YORK        UNITED STATES DISTRICT COURT              SOUTHERN DISTRICT

---

*The New York City District Council of Carpenters Pension Fund, et al*          Plaintiff

against

*Pitkin Carpet Inc.*                                                            Defendant

---

STATE OF NEW YORK
COUNTY OF ALBANY          SS.:

_____ Jessica Miller _____ , being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____ January 29, 2008 _____ , at __2:00pm__ , at the office of the

Secretary of State of the State of New York in the City of Albany, New York deponent served the annexed

Summons and Complaint with Exhibits with Judges Rules

on

_____ Pitkin Carpet Inc. _____ , the

Defendant in this action, by delivering to and leaving with _____ Carol Vogt _____ ,

AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the

Office of the Secretary of State of the State of New York, __2__ true copies thereof and that at the time

of making such service, deponent paid said Secretary of State a fee of __40__ dollars; That said service

was made pursuant to Section __306 Business Corporation Law__ .

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office

of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said

defendant.

Description of the person served:  Approx. Age: __43__      Approx. Wt: __118__      Approx. Ht: __5'__

Color of skin: __White__    Hair color: __Brown__    Sex: __F__    Other: _____

Sworn to before me on this

__2nd__  day of _____ January, 2008 _____

DONNA M. TIDINGS
NOTARY PUBLIC, State of New York
No. 01TI4898570, Qualified in Albany County
Commission Expires June 15, 2011

Jessica Miller

Invoice•Work Order # SP0800978

*SERVICO. INC. - PO BOX 871 - ALBANY. NEW YORK 12201 - PH 518-463-4179*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL
OF CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, and THE NEW YORK
CITY AND VICINITY CARPENTERS LABOR
MANAGEMENT COOPERATION FUND,
by MICHAEL J. FORDE, and PAUL O'BRIEN,
as TRUSTEES AND MICHAEL J. FORDE, AS
EXECUTIVE SECRETARY-TREASURER, DISTRICT
COUNCIL FOR NEW YORK CITY AND VICINITY,
UNITED BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA,

                                 Plaintiffs,

            -against-

PITKIN CARPET INC.,

                                Defendant.
-----------------------------------------------------------------------X

08 CV 869 (LTS)
ECF CASE

**CLERKS
CERTIFICATE**

     I, J. MICHAEL MCMAHON, Clerk of the United States District Court for the Southern District of

New York, do hereby certify that this action commenced on January 24, 2008 by filing of the Summons and

Complaint, and a copy of the Summons and Complaint having been served on the defendant, Pitkin Carpet Inc.

on January 29, 2008, by delivering two (2) true copies thereof to Carol Vogt, an authorized clerk in the Office

of the Secretary of State of the State of New York, and proof of service being filed on February 20, 2008.

     I further certify that the docket entries indicate that the defendant has not filed an answer or otherwise

moved with respect to complaint herein.  The default of the defendant is hereby noted.

Dated: _April 24, 2-58_
       New York, New York

                         **J. MICHAEL MCMAHON**
                            Clerk of the Court

                 By: _____
                             Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY          08 CV 869 (LTS)
FUND, NEW YORK CITY DISTRICT COUNCIL OF         ECF CASE
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY            **AFFIDAVIT OF**
FUND, NEW YORK CITY DISTRICT COUNCIL OF         **SERVICES**
CARPENTERS CHARITY FUND, and THE NEW
YORK CITY AND VICINITY CARPENTERS
LABOR MANAGEMENT COOPERATION FUND,
by MICHAEL J. FORDE and PAUL O'BRIEN,
as TRUSTEES, and MICHAEL J. FORDE, as EXECUTIVE
SECRETARY-TREASURER, DISTRICT COUNCIL
FOR NEW YORK CITY AND VICINITY, UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS
OF AMERICA,

                                        Plaintiffs,

                -against-

PITKIN CARPET INC.,

                                        Defendant.
------------------------------------------------------------------------X
STATE OF NEW YORK          )
                           :SS.:
COUNTY OF NEW YORK         )


ANDREW GRABOIS, being duly sworn, deposes and says:

1.  I am a member of the Bar of this Court and am associated with the firm of O'Dwyer &

Bernstien, LLP, attorneys for plaintiffs herein and submit this affidavit in support of the instant

application for default judgment and order.

2. On January 23, 2008, Rich Gage, a paralegal in this office, drafted and revised a complaint, cover sheet and other required documents. He spent 0.5 hours on this matter at a billing rate of $125.00 per hour for a total of $62.50 in attorneys' fees.

3. On January 23, 2008, your deponent reviewed and finalized the aforementioned documents. I spent 0.5 hours at a billing rate of $350.00 per hour for a total of $175.00 in attorneys' fees.

4. On January 24, 2008, Mr. Gage prepared and filed the aforementioned documents with the Clerk of the Court. He spent 1.0 hours at a billing rate of $125.00 per hour for a total of $125.00 in attorneys' fees.

5. On January 24, 2008, Mr. Gage prepared and filed the aforementioned documents on the Electronic Case Filing system. He spent 0.5 hours on this matter at a billing rate of $125.00 per hour for a total of $62.50 in attorneys' fees.

6. On January 24, 2008, Mr. Gage prepared and mailed the aforementioned documents for service of process. He spent 0.5 hours on this matter at a billing rate of $125.00 per hour for a total of $62.50 in attorneys' fees.

7. On February 20, 2008, Ian Henderson, a paralegal in this office prepared and filed the affidavit of service with the Court and on the ECF system. He spent 0.5 hours on this matter at a billing rate of $200.00 per hour for a total of $100.00 in attorneys' fees.

8. On April 23, 2008 and April 24, 2008, Mr. Henderson drafted the required confirmation documents, including a proposed judgment and order and affidavit of services rendered. He spent a total of 4.0 hours on this matter at a billing rate of $200.00 per hour for a total of $800.00 in attorneys' fees.

9. On April 24, 2008, your deponent reviewed and finalized the aforementioned default documents. I spent 0.5 hours on this matter at a billing rate of $350.00 per hour for a total of $175.00 in attorneys' fees.

2

10.  The cost of the process server to effectuate service of process was $60.00.

WHEREFORE, deponent respectfully requests allowance of attorneys' fees in the sum of $1,562.50 and costs arising out of this action in the amount of $60.00 for a total of $1,622.50.

ANDREW GRABOIS (AG 3192)

Sworn to before me this
24th day of April, 2008

NOTARY PUBLIC

NICHOLAS HANLON
NICHOLAS HANLON New York
Notary Public, State of New York
No. 02HA6167368    County
Qualified in Westchester County 2011
Commission Expires May 29, 2011

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL
OF CARPENTERS PENSION FUND, NEW
YORK CITY DISTRICT COUNCIL OF
CARPENTERS WELFARE FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
VACATION FUND, NEW YORK CITY                              08 CV 869 (LTS)
DISTRICT COUNCIL OF CARPENTERS                            ECF CASE
ANNUITY FUND, NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS APPRENTICESHIP,
JOURNEYMAN RETRAINING, EDUCATIONAL                       **JUDGMENT**
AND INDUSTRY FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS CHARITY
FUND, and THE NEW YORK CITY AND VICINITY
CARPENTERS LABOR MANAGEMENT
COOPERATION FUND, by MICHAEL J. FORDE
and PAUL O'BRIEN, as TRUSTEES, and
MICHAEL J. FORDE, as EXECUTIVE SECRETARY-
TREASURER, DISTRICT COUNCIL FOR NEW YORK
CITY AND VICINITY, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

                                    Plaintiffs,

          -against-

PITKIN CARPET INC.,

                                    Defendant.
-------------------------------------------------------------------------X

          This action having been commenced on January 24, 2008 by the filing of a Summons and

Complaint, and a copy of the Summons and Complaint having been served on the defendant Pitkin

Carpet Inc. on January 29, 2008 by delivering two (2) true copies of the same to the Secretary of the

State of New York, pursuant to Section 306(b) of New York Business Corporation Law, and a proof of

service having been filed on February 20, 2008 and the defendant not having answered the Complaint,

and the time for answering the Complaint having expired, and the Clerk of the Court having issued its

certificate of default on April 24, 2008, it is

ORDERED, ADJUDGED AND DECREED: That the Plaintiffs have judgment against

Defendant, pursuant to the arbitration award, in the liquidated amount of $2,350.00, representing costs

and fees arising out of the arbitration, in addition to attorneys' fees and costs arising out of this action

in the amount of $1,622.50 for a total of $3,972.50 and that Pitkin Carpet Inc. and its officers are

ordered to produce any and all books and records relating to Pitkin Carpet Inc. for the period of

January 1, 2004 through November 17, 2007.


Dated: _____
      New York, New York

 

                                          _____
                                          Honorable Laura T. Swain
                                          United States District Judge

                                          This document was entered on the docket
                                          on _____.

STATE OF NEW YORK      )
                                          :SS.:
COUNTY OF NEW YORK   )


IAN K. HENDERSON, being duly sworn, deposes and says:  I am not a party to the action, am over

18 years of age and reside in Brooklyn, New York.  On the 24th day of April, 2008, I served plaintiffs'

**NOTICE OF MOTION and SUPPORTING DOCUMENTATION** to the following party by

depositing a true copy thereof in a post-paid wrapper, in an official depository, under the exclusive care and

custody of the United States Postal Service within New York State, addressed to the following person at the

last known address set forth after the name below:


TO:     Pitkin Carpet Inc.
        368 Gunhill Road
        Bronx, NY 10467




                                                                      _____
                                                                      IAN K. HENDERSON


Sworn to before me this
24th day of April, 2008

_____
NOTARY PUBLIC


                    ROSA FALLON
               Commissioner of Deeds
        City of New York - No. 2-12032
               Qualified in Kings County
        Commission Expires Jan 01, 20_10_